**Hazel BURGOYNE**

v.

**William L. LUKHARD et al.**

**Civ. A. No. 430–72–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 4, 1973.

John M. Levy, Neighborhood Legal Aid, Richmond, Va., for plaintiff.

Stuart H. Dunn, Asst. Atty. Gen. of Va., William G. Broaddus, County Atty., Robert L. Dolbeare, Asst. County Atty., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This class action, brought on behalf of all recipients of public assistance in the State of Virginia, seeks declaratory and injunctive relief against William L. Lukhard, Director of the Department of Welfare and Institutions (DWI) for the State of Virginia, Mildred G. Davis, Superintendent of the Department of Public Welfare for the County of Henrico, Virginia, in that capacity and as representative of local superintendents of welfare in the cities and counties of Virginia. The named plaintiff, Hazel Burgoyne, a recipient of public assistance, resides in the County of Henrico, Virginia.

Although the parties have reached an agreement tentatively settling most of the specific issues, the Court has been called upon to rule upon an alleged defect in the State's proposed procedure in reference to appeal of suspended welfare payments. Mrs. Burgoyne's original complaint was that then existing procedures for the termination, suspension and reduction of public assistance by local and state welfare agencies were defective in several respects. Mrs. Burgoyne complained that welfare recipients were denied adequate notice and opportunity for a prior hearing as mandated in Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1969) in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and the regulations promulgated under the Social Security Act, 42 U.S.C. § 601 et seq., 45 C. F.R. 205.

Jurisdiction is attained by virtue of 28 U.S.C. § 1343(3) and (4), and 42 U. S.C. § 1983.

This being a class action, the parties have submitted for the Court's approval in accord with 23(c) F.R.Civ.P., the agreement as to those issues over which the parties have been able to reach an accord. The remaining issues are before the Court on the parties' respective motions for summary judgment. While there are some controverted matters, the uncontroverted facts are as follows.

Prior to August 1, 1972 Mrs. Burgoyne had been receiving a grant of $191.00 per month under the Aid to Families with Dependent Children Program. On or about June 27, 1972 a form entitled "Advance Notice of Proposed Action" [1] was mailed to her, informing her that her grant would be reduced to $97.00 per month, effective August 1, 1972. The reason for such action was stated to be: "Delete caretaker —unwilling for court action to be taken against responsible relative."

Mrs. Burgoyne claims to have contacted local agency officials subsequent to

---

1. Copy of Plaintiff's Exhibit I.

receiving notice of the proposed action, but prior to the August 1, 1972 action date. Although she did not file a request for a hearing[2] at that time, she claims to have taken steps, at the behest of local welfare officials, to maintain her eligibility for the higher assistance grant. Defendants deny these contentions.

Mrs. Burgoyne's welfare assistance was ultimately reduced to $97.00 per month on August 1, 1972, as proposed. On August 9, 1972, she, with the assistance of counsel, filed with the DWI a request for a hearing on the matter, and she also requested that her grant be restored to its prior level until such a time as the hearing examiner rendered his decision on the matter. On August 22, 1972 Mrs. Burgoyne filed this suit without having received a response from the DWI.

In her complaint, Mrs. Burgoyne originally challenged the adequacy of notice given her as to the reason for the proposed action. In addition, she challenged the form used to notify her of the proposed action and used generally by welfare agencies throughout the state to notify other welfare recipients of similar proposed actions, for its failure to give welfare recipients more detailed information with reference to their right to a prior hearing. She also challenged that form for its failure to inform recipients of their right to continued assistance at pre-existing levels pending such a hearing, if one be requested.[3] The agreement reached by the parties would incorporate new procedures and make use of new forms, suggested by defendants, which would, if approved by the Court, remedy the alleged defects referred to thus far.

Plaintiff continues to challenge, however, the procedures found in the old form, and incorporated in the proposed form, for requesting a hearing.

Basically, the procedures proposed by defendants and partially agreed to by plaintiff[4] would provide for a fifteen day notice of proposed action to be sent to the welfare recipient thereby affected. Such notice would include a statement of "the reasons for the proposed action, clearly stated in terms easily understood by the recipient."[5] The form used for such notice[6] would inform the recipient of a local agency representative with whom he or she could discuss the proposed action. In addition, the form would indicate to the recipient his right to a hearing either prior to the proposed action's taking effect, if requested within fifteen days (date indicated on the form), or subsequent thereto, if requested within thirty days (date indicated on the form).

Included with the proposed form notice would be a pamphlet entitled "What is a Fair Hearing."[7] This pamphlet would explain to the recipient in simplistic language and some detail the type of hearing to which one is entitled and notify the recipient of the right to appeal the decision rendered at such hearing to the State Board. The pamphlet would also provide a designated space for the local agency to insert the name and location of any legal aid society whose services would be available to the recipient. Finally, the pamphlet would include a statement informing recipients of the

---

2. It would appear that what defendants' forms throughout refer to as an "appeal" from the decision of the local board is in effect the prior hearing mandated by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970), as it is the first opportunity secured to welfare recipients to appear before an impartial decision maker to argue their claim. Noting also the availability of a further appeal from the hearing examiner's decision in this first "appeal" from the local board's decision, this memorandum will, for the sake of clarity, refer to the preliminary "appeal" as a hearing.

3. See note 1, *supra.* (quote)

4. See defendant's Exhibit A, p. 2.

5. See note 4, *supra.*

6. Copy of defendant's Exhibit A, p. 1.

7. Copy of defendant's Exhibit A, p. 3.

procedures whereby they could request a hearing. That statement would read:

*How Do You Ask for a Fair Hearing?*

If you want to ask for a fair hearing, call or write the local welfare agency or go to the office and ask your worker to help you fill out the appeal form. You may also ask for a fair hearing by writing to the Chief Hearing Officer, Division of General Welfare, 429 S. Belvidere St., Richmond, Virginia 23220.

It is this last item and the procedures incorporated therein with which plaintiff continues to take issue.

Plaintiff objects to the fact that a welfare recipient who would question the decision of his local welfare agency is directed to the very agency whose decision he questions in order to obtain the forms necessary to request a state hearing. Plaintiff argues that recipients with meritorious claims might thereby be subjected to the undue influence of local officials having adverse interests and wrongfully deterred from pressing for a hearing.

Plaintiff suggests that the potential abuses of which she complains could be avoided by requiring that the form to be used in requesting a hearing be sent to recipients with the notice of proposed action. Plaintiff contemplates that recipients who would question the local agencies' decisions could then request a hearing without first consulting local welfare officials.

Defendant Davis voices concern that the practice of including hearing request forms with the notices of proposed action creates great risk that such hearings would be requested by recipients as a matter of course. She admits that the reason for not adopting plaintiff's suggestion is to induce recipients to consult first with local officials. The objective is to encourage local settlements without the necessity of a hearing. Defendant Davis argues further that recipients' rights are not thereby endangered because local officials' interests are not truly adverse to the interests of recipients and such officials can therefore be expected to deal openly and candidly with recipients who would seek to challenge the decisions of the local officials. This is particularly true, defendant contends, with respect to the caseworkers with whom the recipients would typically be in contact over such matters. Defendant points out that it is not the decision of the caseworker to take the proposed action but that of the local board.

The goal of settling these matters locally prior to the hearing stage is, of course, laudible from the standpoint of administrative efficiency. It has the advantage of correcting mistakes by the agency at an earlier point in time and of discouraging frivolous claims with a mimimum consumption of limited agency resources. However, that goal and the means chosen to accomplish it must be considered in light of the danger to individual rights that might be involved. Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969); Canady v. Butz, 480 F.2d 314 (4th Cir. 1973), Cf. United States v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

If we could assume the impartiality of local welfare officials with whom a complaining recipient would be placed in contact, the suggested procedure would undoubtedly be unobjectionable. However, if as plaintiff suggests, those welfare officials have interests which are adverse to the recipients', there may be a potential for abuse against which this Court should offer its protection. It was because of the caseworker's potentially adverse interests to those of the recipient in Goldberg v. Kelly, *supra* that led the Court there to consider it unsafe to leave the presentation of the recipient's claim to the caseworker. Similarly here, it may be that the caseworker would be in a position to exert an undue influence on the recipient.

This is not to suggest, necessarily, bad faith on the part of those welfare officials with whom the recipients would be placed in contact. Rather, it is

merely recognition of the fact that such officials, if found to have interests which are adverse to the recipients', can hardly be considered effective advisors to the recipients who would consult them. Assuming the existence of such adverse interests, there is a sufficient danger that the officials in question, albeit acting in good faith, would seek to influence recipients to drop claims which they, the officials, would consider frivolous, but which, to the objective observer, would not be without merit.

Even this potentiality, standing alone, might not be so great a threat to the procedural rights of welfare recipients as to require protective action by the Court, if it could be assumed that recipients would recognize the potential bias involved and consider that factor in deciding the amount of reliance to be placed on any advice given. However, considering the low educational attainment of many welfare recipients, it may fairly be questioned whether such individuals would be sophisticated enough to recognize the existence of any such adverse interests. The Court in Goldberg v. Kelly, *supra*, 397 U.S. at 268–269, 90 S.Ct. 1011; similarly took account of the impact of educational deficiencies among welfare recipients in another context. Moreover, the nature of our welfare system is such that the continued contact between welfare recipients and local welfare officials in such areas as employment and economic counseling may tend to create a natural dependency by welfare recipients on such officials. It might be shown that in the typical case such a dependency would reach the point of undue reliance on the advice of such officials as to all matters, including the viability of a claim challenging a decision in which those officials have played a part.

The issue therefore resolves itself into two parts:

1) Do the local officials with whom welfare recipients can be expected to be placed in contact have interests which are so adverse to the recipients' as to present a danger of undue influence, and

2) Can recipients be expected to place reliance on the advice of such officials in deciding whether or not to press for a hearing to challenge the decisions of the local agency?

Assuming the foregoing could be answered in the affirmative, this Court would be bound to hold, as a matter of law, that the rights of welfare recipients to a fair hearing would be so jeopardized as to amount to a denial of due process. The mandate of Goldberg v. Kelly, *supra*, is clear, that welfare recipients be given adequate notice of any proposed action affecting them adversely and an opportunity for a prior hearing on the matter. It is the latter requirement essentially at issue here. It may be, as defendants contend, that the proposed procedures technically meet these requirements. Admittedly, considering the matter in the abstract, it would not appear that requiring a recipient to contact his local agency to secure a hearing request form would be unduly burdensome. However, where it is shown that the system designed to provide the opportunity for such hearing has purposely built into it a procedure intended to deter the exercise of that right and a sufficient possibility exists that undue influence might be used as the deterring factor, it can safely be held that due process is lacking. Cf. United States v. Jackson, *supra* 390 U.S. at 581, 88 S.Ct. 1209.

Defendant Lukhard notes the existence of an alternative procedure, incorporated into the proposed form, whereby welfare recipients may request a hearing directly through the DWI, without the necessity of contacting local officials. The suggestion seems to be that, even assuming a defect in the procedure whereby hearing request forms are to be obtained through local agencies, this alternative procedure is sufficient. However, defendant Davis has openly admitted that the overall intent and projected effect of the combined procedures is to induce recipients to contact the local agency first, before filing a formal request for a hearing. The

Court therefore concludes that a defect with respect to the alternative which would accomplish that purpose would be fatal as to the combination of procedures.

These conclusions with respect to plaintiff's due process claims are further bolstered by the fact that the procedure of which plaintiff complains would appear to be at odds with the spirit, if not the latter, of 45 C.F.R. § 205.-10(a)(3)(i) and (ii).

Subsection 205.10(a)(3)(i) provides:

(i) A request for a hearing is defined as any clear expression (oral or written) by the claimant (or person acting for him, such as his legal representative, relative or friend) to the effect that he wants the opportunity to present his case to higher authority.

Even assuming that defendants would faithfully abide by this regulation in practice, it would appear that recipients are not given adequate notice of their rights thereunder, since the statement appearing in the proposed pamphlet regarding such requests clearly implies that a recipient who would request a hearing through his local agency must do so by filling out a hearing request form available through that agency. There is no indication that other modes of expression, "written or oral", would also suffice.

Subsection 205.10(a)(3)(ii) provides:

(ii) The freedom to make such a request must not be limited or interfered with *in any way*, and agency emphasis must be on helping the claimant to submit and process his request, and in preparing his case, if needed.

[Emphasis added]

Defendant Davis' statement that the goal of encouraging local settlements, prior to the hearing stage, might be facilitated by having a local agency representative "explain [to the recipient] the reasoning behind the regulations giving rise to the particular decision" prior to the recipient's filing of a request for a hearing suggests a type of interference, albeit persuasive rather than coercive, which is inconsistent with the spirit of the regulation.

■ With respect to plaintiff's motion for summary judgment, defendants correctly assert that plaintiff has not thus far adduced a sufficiency of uncontroverted evidence to establish the fact that the interests of local welfare officials who would typically be in contact with welfare recipients are so adverse to the interests of the recipients over such matters as to present the dangers heretofore referred to. Nor is this Court convinced, by the record before it, that welfare recipients typically place the level of reliance on the advice given by local welfare officials with respect to such matters as would present such danger. It follows therefore that plaintiffs motion for summary judgment must be denied.

On the other side of the coin, however, the Court is also not convinced that plaintiff would be unable to establish at trial the facts which would support her position. It may well be that plaintiff can show that the caseworkers, with whom welfare recipients are generally in contact over such matters, are typically so involved in the process of investigating the eligibility of recipients for continued assistance and in making initial recommendations of action to be taken, that they may be assumed to have an interest, adverse to the recipients' in preserving the decisions of the local board. Cf. Goldberg v. Kelly, *supra*, 397 U.S. at 269, 90 S.Ct. 1011.

Moreover, the allegations of plaintiff's complaint, with respect to her own experience, suggest a prime example of how welfare recipients might be prejudiced by the procedures under attack. It may well be that plaintiff will be able to prove her attempt to attain satisfaction at the local level and show further that it was the undue influence of local officials which temporarily deterred her from pressing for a hearing. In plaintiff's case, the merit of her substantive claim was ultimately shown by the fact

that the DWI did later reverse itself on the policy under which the decision to reduce her assistance had been made.

It likewise follows therefore that defendants' motion for summary judgment must also be denied.

Finally, the Court considers it the better procedure to withhold approval of the agreement reached between the parties as to the matters tentatively settled upon until the affect of facts adduced at a hearing on the issues involved may be considered.

An appropriate order shall issue.